

1  MICHAEL T. LESAGE STB 30628
2  LESAGE LAW CORPORATION
   MAILING: P.O. BOX 306
3  PASO ROBLES, CA. 93447-0306
   OFFICE: 620 13TH STREET
4  PASO ROBLES, CA. 93446
   TELEPHONE: (805) 238-3484
5  FAX: (805) 239-7377

6  ATTORNEY FOR: DEBTOR IN POSSESSION
7  PATRICK D. FITZGERALD

FILED

JUL - 8 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

KVAS

8
9           UNITED STATES BANKRUPTCY COURT
10          EASTERN DISTRICT OF CALIFORNIA

11                                    ) Case No. 09-21204-C-11
12  In re:                            )
13  PATRICK DANIEL FITZGERALD,        )
14               Debtor.              ) NOTICE OF MOTION AND MOTION
15                                    ) UNDER SECTION 363 OF THE
                                      ) BANKRUPTCY CODE FOR ORDER
16                                    ) (I) APPROVING THE SALE TO RUBY
                                      ) PIPELINE, LLC OF A RIGHT-OF-WAY
17                                    ) AFFECTING THE DEBTOR'S VYA RANCH
                                      ) PROPERTY FREE AND CLEAR OF ALL
18                                    ) LIENS, CLAIMS, ENCUMBRANCES AND
                                      ) INTERESTS; AND (II) FINDING THAT
19                                    ) RUBY PIPELINE, LLC IS A GOOD FAITH
                                      ) PURCHASER
20
                                      )        HEARING
21
                                      ) Date:   August 4, 2010
22                                    ) Time:   10:00] a.m.
                                      ) Dept:   C, Courtroom 35
23                                    )         501 I Street, 6th Floor
                                      )         Sacramento, CA 95814
24                                    ) Judge: Hon. Christopher M. Klein
                                      )

25  TO THE HONORABLE CHRISTOPHER M. KLEIN; AND OTHER PARTIES IN
    INTEREST:
26
27          PLEASE TAKE NOTICE that on **August 4, 2010]** at **10:00** a.m. in Courtroom 35
28  located at 501 I Street, Sacramento, California, Patrick Daniel Fitzgerald, debtor and debtor in

possession in the above-captioned chapter 11 case (the "Debtor"), will and does move the Court (the "Motion") for an order pursuant to section 363 of the Bankruptcy Code (1) approving the sale to Ruby Pipeline, L.L.C. ("Ruby") of an easement for the construction of an underground interstate natural gas pipeline (the "Pipeline") on the Debtor's Vya Ranch Property (the "Property") free and clear of all liens, claims, encumbrances and interests, and (2) finding that Ruby is a good faith purchaser.

On or about April 5, 2010, Ruby obtained a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission ("FERC") approving the Pipeline project, which will stretch 675 miles from Opal, Wyoming, to interconnections near Malin, Oregon. The 42-inch Pipeline will have an initial design capacity of up to 1.5 billion cubic feet per day and will access significant gas supplies in the Rockies and make them available to consuming markets in California, Nevada and the Pacific Northwest. The Pipeline will require a 50-foot wide perpetual permanent easement across the Property measuring 25 feet on each side of the centerline of the Pipeline and an additional temporary construction easement 65 to 145 feet in width to be used during the initial construction period. The required Pipeline easement across the Property is referred to herein as the "Right-Of-Way."

As early as August 2009, Ruby and the Debtor initiated negotiations regarding a purchase of the Right-Of-Way. After approximately nine months of negotiations, Ruby and the Debtor have settled on a cash payment price of $1,500 per acre for the Right-Of-Way for a total of approximately $13,500. In addition, Ruby has agreed to:

- Fund an escrow account in the amount of approximately $86,500 to water well improvements, but which could be extended to other ranch improvements. The escrow payment is additional compensation for the construction access necessary for the Right-Of-Way, normal construction damages, grazing loss within the construction Right-Of-Way, and use of access roads (as identified below).

- Pay for the use of dust abatement water from the well at the Ranch Headquarters at $3.00/1000 gallons (which payment would be separate from

2

1                above amounts). Any additional water needed from other wells will be

2                negotiated separately.

3          • Re-contour and reseed the Right-Of-Way as close as practical to its original

4           condition.

5         In connection with the Right-Of-Way, Ruby will be authorized to use the portion of

6 access road W-14 that lies easterly of the reservoir, but Ruby will not be authorized to use road W-

7 14A.

8         Ruby's purchase of the Right-Of-Way is dependent on: (i) the Court's authorization

9 of the Sale under section 363(b) of the Bankruptcy Code; (ii) the approval of the Sale free of all

10 liens, encumbrances and interests under section 363(f) of the Bankruptcy Code; and (iii) the Court's

11 finding that Ruby is a good faith purchaser in accordance with section 363(m) of the Bankruptcy

12 Code.

13         In support of the Motion, the Debtor relies on the Memorandum of Points and

14 Authorities annexed hereto, and the Declaration of Patrick Fitzgerald filed concurrently herewith.

15         WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order

16 approving the sale of the Right-Of-Way to Ruby free and clear of all liens, claims, encumbrances

17 and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code, (ii) find that Ruby is a

18 good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, (iii) waive the 14-day

19 waiting period provided under Federal Rule of Bankruptcy Procedure 6004(h), and (iv) grant such

20 other and further relief as is just and proper.

21

22 Dated: July 7, 2010

23       Paso Robles,Ca.                  Michael T. Le Sage

24

25

26

27

28

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By the Motion, the Debtor seeks the Court's authorization, under section 363(b) of title 11, United States Code, §§ 101-1532 (the "Bankruptcy Code") to sell a permanent Right-Of-Way (as described and defined below) to Ruby for total consideration of nearly $100,000 (the "Sale"). The Sale will benefit the estate by providing cash proceeds and facilitating development of the Vya Ranch for the benefit of the Debtor's estate. As discussed herein, the Debtor submits that approval of the Sale is warranted under the approval benchmarks articulated by many courts. In support of the Sale, the Debtor submits that the Sale is clearly supported by the Debtor's business judgment and has strong business justification. Further, adequate and reasonable notice of the Sale will be given to all creditors and interested persons, the price is fair and reasonable under the circumstances, and, at all times, the parties to the Sale have acted in good faith and at arms'-length. The Sale can be accomplished free and clear of liens, claims, encumbrances and interests because Ruby could compel any holder of such an interest to accept just compensation through the exercise of its power of eminent domain under the Natural Gas Act, 15 U.S.C. § 717f(h).

. Finally, because the Debtor and Ruby have at all time acted in good faith, at arms'-length, and without collusion, Ruby is entitled to the good faith protections of section 363(m) of the Bankruptcy Code. Therefore, the Court should grant the Motion.

## II.

## FACTUAL BACKGROUND

### A.    The Pipeline.

On or about April 5, 2010, Ruby obtained a Certificate of Public Convenience and Necessity from the FERC approving the Pipeline project, which consists of a 42-inch diameter interstate natural gas pipeline, which will stretch 675 miles from Opal, Wyoming, to

4

interconnections near Malin, Oregon.[1]  The Pipeline will have an initial design capacity of up to 1.5 billion cubic feet per day and will access significant gas supplies in the Rockies  and make them available to consumption markets in California, Nevada and the Pacific Northwest.

**B.      Agreement To Purchase The Right-Of-Way.**

The Pipeline's FERC approved plan requires it to cross the Debtor's Property.  The Pipeline will require   a 50-foot wide perpetual permanent easement across the Property measuring 25 feet on each side of the Pipeline's centerline and an additional temporary construction easement 65 to 145 feet in width to be used during the initial construction period.  The exact width of the temporary easement will depend on terrain and topography.  The permanent easement will encompass approximately 8.448 acres—less than one tenth of one percent (0.1%) of the Property's 10,000 acres—and is more specifically described in the land plats attached as  Exhibits   to the Fitzgerald Declaration.  The required Pipeline easement across the Property is referred to herein as the "Right-Of-Way."

In August of 2009 Ruby and the Debtor initiated negotiations regarding a purchase of the Right-Of-Way.  After approximately nine months of negotiations, Ruby and the Debtor have settled on a price of $1,500 per acre for the Right-Of-Way for a total of approximately $13,500.  In addition, Ruby has agreed to:

- Fund an escrow account in the amount of approximately $85,000 to cover (i) $75,000 primarily for water well improvements, but which could be extended to other ranch improvements, and (ii) $10,000 to cover legal expenses for the Debtor.  The escrow payment is additional compensation for the construction access necessary for the Right-Of-Way, normal construction damages, grazing loss within the construction Right-Of-Way, and use of access roads (as identified below).

- Pay for the use of dust abatement water from the well at the Ranch Headquarters at $3.00/1000 gallons (which payment would be separate from

---

[1]  A true and correct copy of the FERC Certificate of Public Convenience and Necessity regarding the Pipeline is attached to the  Fitzgerald  Declaration .

5

above amounts).  Any additional water needed from other wells will be negotiated separately.

- Re-contour and reseed the Right-Of-Way as close as practical to its original condition.

In connection with the Right-Of-Way, Ruby will be authorized to use the portion of access road W-14 that lies easterly of the reservoir, but Ruby will not be authorized to use road W-14A.

The purchase of the Right-Of-Way is conditioned on: (i) this Court's authorization of the Sale under section 363(b) of the Bankruptcy Code; (ii) the approval of the Sale free of all liens, encumbrances and interests under section 363(f) of the Bankruptcy Code; and (iii) this Court's finding that Ruby is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code.

**C.    Ruby's Eminent Domain Rights As The Holder Of A Certificate Of Public Convenience And Necessity.**

The Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, specifically 15 U.S.C. § 717f(h) grants the power of eminent domain to a holder of a federal certificate of public convenience and necessity:

> Right of eminent domain for construction of pipelines, etc.  When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts . . . .

15 U.S.C. § 717f(h).

As noted above, Ruby has been issued a certificate of public convenience and necessity by the FERC to construct the Pipeline.  Accordingly, under the NGA, Ruby would be authorized to seek relief from the automatic stay in order to permit it to exercise the power of

6

- **Pay for the use of dust abatement water** from the well at the Ranch Headquarters at $3.00/1000 gallons (which payment would be separate from above amounts).  Any additional water needed from other wells will be negotiated separately.

- **Re-contour and reseed the Right-Of-Way** as close as practical to its original condition.

In connection with the Right-Of-Way, Ruby will be authorized to use the portion of access road W-14 that lies easterly of the reservoir, but Ruby will not be authorized to use road W-14A.

The purchase of the Right-Of-Way is conditioned on: (i) this Court's authorization of the Sale under section 363(b) of the Bankruptcy Code; (ii) the approval of the Sale free of all liens, encumbrances and interests under section 363(f) of the Bankruptcy Code; and (iii) this Court's finding that Ruby is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code.

**C.    Ruby's Eminent Domain Rights As The Holder Of A Certificate Of Public Convenience And Necessity.**

The Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, specifically 15 U.S.C. § 717f(h) grants the power of eminent domain to a holder of a federal certificate of public convenience and necessity:

> Right of eminent domain for construction of pipelines, etc.  When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts . . . .

15 U.S.C. § 717f(h).

1   As noted above, Ruby has been issued a certificate of public convenience and

2   necessity by the FERC to construct the Pipeline. Accordingly, under the NGA, Ruby would be

3   authorized to seek relief from the automatic stay in order to permit it to exercise the power of

4   eminent domain to acquire the Right-Of-Way should the Court not approve the Sale as

5   detailed herein.

6                                   III.

7                                ARGUMENT

8   A.    The Debtor Has Articulated A Reasonable Business Justification For the Sale of the
           Transferred Assets.
9
              Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part,
10            that:

11            The trustee, after notice and a hearing, may use, sell or lease, other than
              in the ordinary course of business, property of the estate[.]
12
13  11 U.S.C. § 363(b). Under applicable legal standards, approval of a sale is appropriate if the

    court finds that the decision to pursue a transaction represents a reasonable business judgment
14
    by the debtor. See, e.g., In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial
15
    part of a Chapter 11 estate other than in the ordinary course of business may be conducted if a
16
    good business reason exists to support it."); In re 240 North Brand Partners, Ltd., 200 B.R.
17
    653, 659 (B.A.P. 9th Cir. 1996) ("As a result, debtors who wish to utilize § 363(b) to dispose of
18
    property of the estate must demonstrate that such disposition has a valid business
19
    justification."); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir.
20
21  1987) ("The bankruptcy court has considerable discretion in deciding whether to approve or

    disapprove the use of estate property by a debtor in possession, in light of sound business
22
    justification) (citation omitted); Able v. Shugrue (In re Ionosphere Clubs, Inc.), 184 B.R. 648,
23
    653 (S.D.N.Y. 1995) ("Rather, a judge determining a § 363(b) application must expressly find
24
    from the evidence presented at the hearing a good business reason to grant such an
25
    application.").
26
27            Bankruptcy Code section 363 does not require that the court substitute its

28  business judgment for that of the debtor. See, e.g., In re Ionosphere Clubs, Inc., 100 B.R. 670,

                                   8

676 (Bankr. S.D.N.Y. 1989) (court will not substitute an opposing witness's business judgment for debtor's unless testimony "established that [the debtor] has failed to articulate a sound business justification for its chosen course"). Rather, the court should ascertain whether the debtor, in exercise of its business judgment, has articulated a reasonable business justification for the proposed transaction. See, e.g., Lewis v. Anderson, 615 F.2d 778 (9th Cir. 1979), cert. denied, 449 U.S. 869 (1980). This standard is consistent with "the broad authority to operate the business of the debtor . . . [which] indicates Congressional intent to limit court involvement in business decisions . . . [so that] a court may not interfere with a reasonable business decision made in good faith." In re Airlift Int'l, Inc., 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

In determining whether a proposed sale satisfies the business judgment standard—i.e., whether a reasonable business justification exists for the sale—courts have required four factors be proven: (1) a sound business reason for the sale; (2) adequate and reasonable notice of the sale given to interested persons; (3) the sale price is fair and reasonable; and (4) the parties to the sale have acted in good faith. In re Medical Software Solutions, 286 B.R. 431, 439-40 (D. Utah 2002) ("In order to approve a sale of substantially all the Debtor's assets outside the ordinary course of business . . . [t]he Debtor must show (1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith."); In re Delaware and Hudson Railway, Co., 124 B.R. 169, 176 (D. Del. 1991) ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

The analysis articulated above does not change if the proposed is a private sale, as here, or a public sale. See, e.g., In re Ancor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under

9

§ 363(b).").  The bankruptcy court "has ample direction to administer the estate, including authority to conduct public or private sales of estate property." In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); accord, In re Canyon P'ship, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the Sale of the Right-Of-Way to Ruby satisfies the necessary requirements and, as such, should be approved.

    **1.**  **A Sound Business Justification Exists for the Sale.**

    As set forth above and as supported by the Fitzgerald Declaration, the Debtor, in his business judgment, has determined that the Sale of the Right-Of-Way to Ruby is the best way to maximize the value of the Debtor's estate.  Ruby's offer of $1,500 per acre is not less than Ruby has paid other land holders in the county and is above the current market value of the section of the Property the Right-Of-Way crosses.  Moreover, Ruby is also paying significant additional consideration in the form of the escrows for improvements and legal fees.  Under these circumstances, it is clear that the proposed Sale is supported by a sound business justification.

    **2.**  **Notice Of The Sale Will Be Adequate And Reasonable Under The Circumstances.**

    The Debtor will serve this Motion on all creditors and parties in interest in this bankruptcy proceeding, who will then have ample time to review the Motion, evaluate the Sale and, if necessary, prepare and file any responsive pleadings.  Thus, the Debtor submits that notice of the Sale will be adequate and reasonable under the circumstances.

    **3.**  **The Purchase Price For The Transferred Assets Will Be Fair And Reasonable.**

    The adequacy of purchase price is generally a function of whether the price was reached in good faith.  In re Apex Oil Co., 92 B.R. 847, 874 (Bankr. E.D. Mo. 1988) (holding that the consideration was adequate where it was negotiated in good faith).  Further, a court should approve a proposed sale if the evidence suggests that the purchase price is the highest and best offer available. See In re Integrated Resources, Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), aff'd, 147 B.R. 650 (S.D.N.Y. 1992) ("In general, to receive approval of a

10

proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer.").

Here the purchase price of $1,500 per acre for the Right-Of-Way, as well as the other terms of the Sale, is the result of a comprehensive, arms'-length negotiating process. Due to the unique nature of the subject of the Sale, the Debtor would not have been benefitted by marketing the Right-Of-Way. Ruby is the only potential purchaser of the Right-Of-Way as no other conceivable party would require such a specific easement through the Debtor's property. However, by comparing the price offered by Ruby to other offers put forth by Ruby in the same county, as well as by comparing the price offered by Ruby to the fair market value of the Right-Of-Way, the Debtor is confident that he is receiving the highest and best offer for the Right-Of-Way.

      4.      **The Proposed Sale Was Negotiated At Arms'-Length And Is The Product Of Good Faith.**

The Debtor submits that the Sale has been negotiated and proposed in good faith and is the product of good faith, arms'-length negotiations with the active involvement of the professionals of all necessary parties. Further, there is no evidence of collusion or bad faith— which would be necessary to destroy the inference of good faith. See In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992) ("[C]ourts generally have followed traditional equitable principals in holding that a good faith purchaser is one who buys in good faith and for value. Typically lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (citations and internal quotations omitted); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986). Furthermore, the Sale is not an insider transaction and no party to the transaction is interested in any way.

Viewed upon as a whole, the Sale of the Right-Of-Way is clearly supported by the Debtor's business judgment. As discussed in detail above, there is a sound business reason for the Sale, adequate and reasonable notice of the Sale will be given to all creditors and interested persons, the price of $1,500 per acre plus additional consideration is fair and

11

reasonable under the circumstances, and, at all times, the parties to the Sale have acted in good faith and at arms'-length. As such, the Debtor submits that the Sale of the Right-Of-Way should be approved pursuant to section 363(b) of the Bankruptcy Code.

**B.    The Sale Of The Assets Should Be Free And Clear Of Liens, Encumbrances, and Interests.**

Bankruptcy Code section 363(f) provides that the Court may authorize a sale of property of the estate, "free and clear of any interest in such property of an entity other than the estate," if:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in *bona fide* dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The Debtor proposes that the Sale be free and clear of all liens, encumbrances, and interests in the Right-Of-Way, with any such lien, encumbrance, or interest attaching to the proceeds of the Sale, pursuant to section 363(f)(5). As discussed above, because Ruby holds a certificate of public convenience and necessity, the NGA provides Ruby with the right to take the Right-Of-Way by means of eminent domain if Ruby "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline[.]" 15 U.S.C. § 717f(h). Being authorized to take property by means of eminent domain is a clear way in which a holder of a lien, encumbrance, or interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).[2] Therefore, even if the holder of an

---

[2] Courts in the Ninth Circuit have recognized this application of section 363(f)(5) in the context of the potential to foreclose on a junior lien. See In re Jolan, Inc., 403 B.R. 866 (Bankr. W.D. Wash. 2009) (authorizing a sale of assets over the objection of junior lienholders under § 363(f)(5) because such interests could be foreclosed upon under state

12

interest does not consent, section 363(f) is satisfied and the Right-Of-Way should be sold free and clear of liens, claims, encumbrances and interests.

C.    The Successful Bidder Is Entitled To Good Faith Purchaser Status Pursuant To Section 363(m) Of The Bankruptcy Code.

As discussed above, the Sale has been negotiated and proposed in good faith and is the product of good faith, arms'-length negotiations with the active involvement of the professionals of all necessary parties and without even a scintilla of bad faith or collusion. As such, the Debtor requests that the Court find that Ruby is qualified to acquire the Right-Of-Way in good faith within the meaning of Bankruptcy Code section 363(m).

Bankruptcy Code section 363(m) provides that

> "[t]he reversal or modification on appeal of an authorization under [section 363(b)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . ."

11 U.S.C. § 363(m). Thus, under section 363(m), "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor [or other complaining party] stays the foreclosure [or other] sale pending an appeal." Mann v. Alexander Dawson, Inc. (In re Mann), 907 F.2d 923, 926 (9th Cir. 1990). "[T]he primary goal of the mootness rule [embodied in section 363(m)] 'is to protect the interest of a good faith purchaser . . . of the property,' thereby assuring finality of sales." Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1173 (9th Cir. 1988) (quoting Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 901-02 (9th Cir. 1985)).

In this case, no such bad faith conduct or insider dealings have occurred as of the date of this Motion and will not occur going forward. Ruby is not an insider of the Debtor, and the parties to the Sale have negotiated the Sale in good faith and at arms'-length. Accordingly, the protection of section 363(m) of Bankruptcy Code is appropriate in this case.

---

law); In re Wrangell Seafoods, Inc., Memorandum Re: Sale, Case No. 09-00012, Docket No. 116 (Bankr. D. Alaska, March 9, 2009) (same). But see In re Haskell L.P., 321 B.R. 1, 9 (Bankr. D. Mass 2005) (holding that section 363(f)(5) requires that the trustee or the debtor must be the party able to compel monetary satisfaction).

13

**D.    Relief From The 14-Day Waiting Period Proscribed By Bankruptcy Rule 6004 Is Appropriate**

Federal Rule of Bankruptcy Procedure 6004(h) ("<u>Rule 6004(h)</u>") provides, in pertinent part, that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor hereby requests the order approving the Sale of the Right-Of-Way be effective immediately by providing that the 14-day stay period under Rule 6004(h) is waived.

The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, a leading bankruptcy treatise, Collier on Bankruptcy, suggests that "the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately in all cases where there has been no objection to the procedure." 10-6004 COLLIER ON BANKRUPTCY ¶6004.10 (2010). Furthermore, Collier provides that if an objection is filed and overruled and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. <u>Id.</u>

Elimination of the 14-day stay under the current circumstances would permit the Debtor's estate to recognize value from the Sale immediately. Furthermore, it is the Debtor's understanding that Ruby stands ready, upon entry of an order approving the Sale of the Right-Of-Way, to transfer funds to the Debtor and begin the necessary work on the Pipeline. Such a waiver of the 14-day stay results in benefits to the Debtor's estate without resulting in prejudice to any other party. As such, the Debtor submits that the waiver of the 14-day stay is appropriate under these circumstances.

**IV.**

14

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order approving the sale of the Right-Of-Way to Ruby free and clear of all liens, claims, encumbrances and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code, (ii) find that Ruby is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, (iii) waive the 14-day waiting period provided under Rule 6004(h), and (iv) grant such other and further relief as is just and proper.

Dated: July 7, 2010

Paso Robles,Ca.

Michael T. Le  Sage

## **DECLARATION OF Patrick Fitzgerald**

I, Patrick Fitzgerald declares as follows

1.      I am over 18 years of age, and I have personal knowledge of each of the facts stated in this declaration ("Declaration"), except for those facts stated on information and belief and, as to those facts, I am informed and believe them to be true.

2.      I am the Debtor in Posession.

3.      I submit this Declaration in support of Debtor's "Motion under Section 363 of the Bankruptcy Code for Order (I) Approving the Sale to Ruby Pipeline, LLC of a Right-of-Way Affecting the Debtor's VYA Ranch Property Free and Clear of All Liens, Claims, Encumbrances and Interests; and (II) Finding that Ruby Pipeline, LLC is a Good Faith Purchaser" (the "Motion"). Capitalized terms used, but not defined, herein have the meaning ascribed to such terms in the Motion.

4.      The Pipeline's plan requires it to cross the Debtor's Property.  The Pipeline will require a 50-foot wide perpetual permanent easement across the Property measuring 25 feet on each side of the Pipeline's centerline and an additional temporary construction easement 65 to 145 feet in width to be used during the initial construction period.  The exact width of the temporary easement will depend on terrain and topography.  The permanent easement will encompass approximately 8.448 acres—less than one tenth of one percent (0.1%) of the Property's 10,000 acres—and is more specifically described in the land plats attached as Exhibits to the Ruby Pipeline, Right of Way and Easement Agreement  attached to this  Declaration.  The required Pipeline easement across the Property is referred to herein as the "Right-Of-Way."

5.      In August 2009, Ruby and the Debtor initiated negotiations regarding a purchase of the Right-Of-Way.  After approximately nine months of negotiations, Ruby and the Debtor have settled on a price of $1,500 per acre for the Right-Of-Way for a total of approximately $13,500.  In addition, Ruby has agreed to:

- Fund an escrow account in the amount of approximately $86,500 to cover water well improvements, but which could be extended to other ranch

improvements. The escrow payment is additional compensation for the
construction access necessary for the Right-Of-Way, normal construction
damages, grazing loss within the construction Right-Of-Way, and use of
access roads (as identified below).

- Pay for the use of dust abatement water from the well at the Ranch
  Headquarters at $3.00/1000 gallons (which payment would be separate from
  above amounts). Any additional water needed from other wells will be
  negotiated separately.

- Re-contour and reseed the Right-Of-Way as close as practical to its original
  condition.

6.      In connection with the Right-Of-Way, Ruby will be authorized to use the
portion of access road W-14 that lies easterly of the reservoir, but Ruby will not be authorized to use
road W-14A.

7.      Ruby is not an insider of the Debtor, and the parties to the Sale have
negotiated the Sale in good faith and at arms'-length.

8.      It is the Debtor's understanding that Ruby stands ready, upon entry of an order
approving the Sale of the Right-Of-Way, to transfer funds to the Debtor and begin the necessary
work on the Pipeline.

I declare under penalty of perjury that the foregoing is true and correct to the best of
my knowledge and belief. Executed on Jult 7, 2010, at Stockton, California.

Patrick Daniel Fitzgerald

2

# RUBY PIPELINE, L.L.C.

## RIGHT OF WAY AND EASEMENT AGREEMENT

| | | | | |
|---|---|---|---|---|
| STATE OF | Nevada | ) | LL | Ruby – LL# 3504;3505 |
| | | )ss. | | |
| COUNTY OF | Washoe | ) | CO | 122659 |

KNOW ALL MEN BY THESE PRESENTS:

THAT the undersigned (hereinafter called OWNER, whether one or more), for and in consideration of the sum of TEN AND NO/100 Dollars ($10.00) in hand paid, the receipt of which is hereby acknowledged, does hereby grant, sell and convey unto RUBY PIPELINE, L.L.C., its successors and assigns (hereinafter called "COMPANY"), a Right of Way and Easement for the purposes of laying, constructing, maintaining, operating, patrolling, repairing, replacing and removing a single pipeline (with fittings, tie-overs, cathodic protection equipment, fiber optic and all appliances appurtenant thereto) for the transportation of gas, or any other liquids or substances associated with natural gas, along routes convenient for COMPANY's operations across the lands of OWNER, situated in the County of Washoe , State of Nevada, more particularly described as follows:

Line List No. 3504

A 50.00 foot easement for pipeline purposes across a portion of the Northeast Quarter and the West Half of Section 28, Township 45 North, Range 19 East of the Mount Diablo Meridian, Washoe County, Nevada. Said easement being 25.00 feet on each side of the following described centerline:

Commencing from the Southeast Corner of said Section 28; thence North 87 degrees 54 minutes 15 seconds West, along the South line of said Section 28, a distance of 989.01 feet; thence North 18 degrees 07 minutes 39 seconds West, a distance of 2790.77 feet to the South line of said Northeast Quarter and the Point of Beginning; thence continuing North 18 degrees 07 minutes 39 seconds West, a distance of 2443.75; thence North 33 degrees 14 minutes 55 seconds West, a distance of 80.31 feet; thence North 48 degrees 16 minutes 04 seconds West, a distance of 494.15 feet to the North line of the West Half of said Section 28 and the Point of Terminus, at which point the Northwest Corner of the Northwest Quarter of said Section 28 bears North 87 degrees 51 minutes 13 seconds West, a distance of 1973.22 feet.

Extending or Shortening the side lines to close upon the South line of the Northeast Quarter and North line of the West Half of said Section 28. Containing 150,910.74 Square Feet or 3.464 Acres more or less.

Line List No. 3505

A 50.00 foot easement for pipeline purposes across a portion of the Southwest Quarter and the Southwest Quarter of the Northwest Quarter of Section 21, Township 45 North, Range 19 East of the Mount Diablo Meridian, Washoe County, Nevada. Said easement being 25.00 feet on each side of the following described centerline:

Commencing from the Southwest Corner of said Section 21; thence South 87 degrees 51 minutes 13 seconds East, along the South line of said Section 21, a distance of 1973.22 feet to the Point of Beginning; thence North 48 degrees 16 minutes 04 seconds West, a distance of 751.57 feet; thence North 31 degrees 30 minutes 20 seconds West, a distance of 80.17 feet; thence North 14 degrees 45 minutes 07 seconds West, a distance of 79.94 feet; thence North 12 degrees 41 minutes 30 seconds West, a distance of 964.40 feet; thence North 00 degrees 58 minutes 47 seconds West, a distance of 350.78 feet; thence North 19 degrees 01 minutes 34 seconds East, a distance of 728.57 feet; thence North 00 degrees 13 minutes 20 seconds East, a distance of 80.97 feet; thence North 18 degrees 07 minutes 39 seconds West, a distance of 1359.92 feet to the North line of the Southwest Quarter of the Northwest Quarter and the Point of Terminus, at which point the Northwest Corner of said Section 21 bears North 29 degrees 20 minutes 23 seconds West, a distance of 1566.30 feet.

Extending or shortening the side lines to close upon the South line of the Southwest Quarter and the North line of the Southwest Quarter of the Northwest Quarter of said Section 21. Containing 219,816.45 Square Feet or 5.046 Acres more or less.

More particularly shown on Plat No(s) 300AU-3504 & 300AU-3505, marked Exhibit "A", and by this reference made part hereof. Said Right of Way and Easement granted shall be One-Hundred Fifteen (115) Feet or as required in width during construction and thereafter Fifty (50) Feet in width throughout, extending on, over and across the above-described land.

Any change in use or modification to the rights granted in this Right of Way and Easement agreement will require OWNERS written approval.

OWNER, his/her/its successors, heirs or assigns, reserves all oil, gas and minerals on and under said lands and the right to farm, graze and otherwise fully use and enjoy said lands, provided, however, that COMPANY shall have the right hereafter to cut and keep clear all trees, brush and other obstructions that may injure, endanger or interfere with the construction, maintenance and use of said pipeline, or fittings, tie-overs, cathodic protection equipment and appliances appurtenant thereto. COMPANY shall have all privileges necessary or convenient for the full use of the rights herein granted, together with ingress and egress along said pipeline and over and across said lands. OWNER, his/her/its successors and assigns, shall not without COMPANY's written consent disturb the surface of the Right of Way and Easement in a manner which will result in the removal of surface cover from the pipeline except that cover that is typically disturbed as part of OWNERS ongoing agriculture farming and ranching practices. OWNER also reserves the right to cross over the Right of Way and Easement with utilities and roads after COMPANY's review and approval of said crossing, such review and approval will be timely and approval will not be unreasonably withheld. In the case of an emergency or to locate COMPANY's facilities OWNER shall call 877-712-2288 or the number that is affixed to pipeline markers that are located within the pipeline right of way.

COMPANY shall bury its pipeline to a depth that conforms to US Department of Transportation regulations for depth of cover. If depth of cover is less than 36 inches COMPANY shall notify OWNER of said depth change and location.

COMPANY operates its pipeline under the jurisdiction and regulations of the Federal Energy Regulatory Commission (FERC). In the event that OWNER pursues energy development on the affected lands COMPANY will cooperatively work with OWNER to the benefit of the Vya Ranch to the extent permitted under FERC's rules and regulations.

, Ruby and the Debtor have settled on a cash payment price of $1,500 per acre for the

Right-Of-Way for a total payment of $13,500. In addition, Ruby agrees to:

- Fund an escrow account in the amount of approximately $86,500 to water well

  improvements, but which could be extended to other ranch improvements. The escrow

  payment is additional compensation for the construction access necessary for the Right-

  Of-Way, normal construction damages, grazing loss within the construction Right-Of-

  Way, and use of access roads (as identified below).

- Pay for the use of dust abatement water from the well at the Ranch Headquarters at $3.00/1000 gallons (which payment would be separate from above amounts). Any additional water needed from other wells will be negotiated separately.

Re-contour and reseed the Right of Way as close as practical to its original condition.

OWNER represents and warrants that he is the owner in fee simple of the land hereinafter described, subject only to outstanding mortgages, if any, now of record in said county, and in the event of default by OWNER, COMPANY shall have the right to discharge or redeem for OWNER, in whole or in part, any mortgage, tax or other lien on said land and thereupon be subrogated to such lien and rights incident thereto.

COMPANY and OWNER shall observe and follow the requirements of all applicable statutes, ordinances, regulations, licenses, permits, agreements, or covenants, including without limitation, any requirement to call the state's one-call notification system prior to any construction or excavation along or within said Right of Way and Easement.

COMPANY shall have all privileges necessary or convenient for the full use and enjoyment of the rights granted herein, including without limitation the right to take any action necessary for compliance with federal, state or local laws, rules and regulations.

COMPANY, by the acceptance hereof, agrees to pay for damages to crops, pasture, and fences which may arise from laying, constructing, maintaining, operating, repairing, replacing or removing said pipeline. COMPANY shall compensate landowner for any loss or injury to livestock arising from COMPANY's construction activities.

All fences that must be cut in order to accomplish any of the purposes herein above granted to COMPANY shall be "H" braced on each side of the area covered by this grant and the wire secured so that when the fence is cut, the remainder of the fence shall not go slack or be slackened and after said installation or repair, said fence shall be replaced in as good as condition as said fences were before cutting. COMPANY will install gates along said right of way at landowners request and at reasonable and mutually agreed upon locations.

COMPANY shall take all necessary measures to maintain proper drainage to prevent erosion of the surface of such easement premises, and further at the completion thereof to re-contour and re-seed all disturbed areas with seed mixture as recommended by OWNER and/or appropriate agencies.

COMPANY and OWNER shall not be responsible for injury to persons or damage to property from

any cause outside their control, including without limitation, negligence or intentional acts of the other or third party persons.

TO HAVE AND TO HOLD said Right of Way and Easement unto said COMPANY, its successors and assigns, until such pipeline be constructed and so long thereafter as a pipe line is maintained thereon; and the undersigned hereby bind themselves, and their heirs, executors, administrators, successors and assigns, to warrant and forever defend all and singular said Right of Way and Easement unto said COMPANY, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

In the event that the Federal Energy Regulatory Commission gives COMPANY the authority to abandon the Right of Way and Easement described herein, and Company actually abandons said Right of Way and Easement, this Right of Way and Easement Agreement shall terminate and all rights granted herein shall terminate and Right of Way and Easement shall revert back to the OWNER or OWNER's successors and assigns, and, in that event, COMPANY shall record a release of this Right of Way and Easement Agreement upon the request from Owner, or its successors or assigns.

It is agreed that this Right of Way and Easement Agreement as written is assignable by COMPANY in whole or in part with OWNER's approval, which approval shall not be unreasonably withheld. This Agreement covers the entire agreement between the Parties as to the subject matter described herein, and the Parties agree that no other promises or representations have been made which would alter or otherwise modify the terms set forth herein. This Right of Way and Easement Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

This agreement is subject to court approval.

Executed this ___7 th.___ day of ___July___ ___2010___

OWNER(s)

_Patrick D Fitzgerald_
Patrick D Fitzgerald

**ACKNOWLEDGEMENT**

STATE OF _____ )
                                                    )ss.
COUNTY OF _____ )

      BEFORE ME, THE UNDERSIGNED, A Notary Public, within and for said State and County on this

_____day of _____, 2010, personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument as a free and voluntary act and deed for the uses and purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year last above written.

                                             _____

[Seal]                                 Notary Public

                                           _____

                                           Address

My Commission expires:

_____

STATE OF _____ )
                                                    )ss.
COUNTY OF _____ )

      BEFORE ME, THE UNDERSIGNED, A Notary Public, within and for said State and County on this

_____day of _____, 2010, personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument as a free and voluntary act and deed for the uses and purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year last above written.

                                             _____

[Seal]                                 Notary Public

# ACKNOWLEDGEMENT

STATE OF      _____ )

                                                        )ss.

COUNTY OF    _____ )

        BEFORE ME, THE UNDERSIGNED, A Notary Public, within and for said State and County on this

_____day of _____, 2010, personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument as a free and voluntary act and deed for the uses and purposes therein set forth.

        IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year last above written.


                                       _____

[Seal]                                Notary Public

                                       _____

                                       Address

My Commission expires:

_____


STATE OF      _____ )

                                                        )ss.

COUNTY OF    _____ )

        BEFORE ME, THE UNDERSIGNED, A Notary Public, within and for said State and County on this

_____day of _____, 2010, personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)

acted, executed the instrument as a free and voluntary act and deed for the uses and purposes therein set forth.

        IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year last above written.


                                       _____

[Seal]                                Notary Public

# PATRICK D. FITZGERALD

3018.21 FEET
182.92 RODS
3.464 ACRES

## *EASEMENT DESCRIPTION*

A 50.00 foot easement for pipeline purposes across a portion of the Northeast Quarter and the West Half of Section 28, Township 45 North, Range 19 East of the Mount Diablo Meridian, Washoe County, Nevada. Said easement being 25.00 feet on each side of the following described centerline:

Commencing from the Southeast Corner of said Section 28; thence North 87 degrees 54 minutes 15 seconds West, along the South line of said Section 28, a distance of 989.01 feet; thence North 18 degrees 07 minutes 39 seconds West, a distance of 2790.77 feet to the South line of said Northeast Quarter and the Point of Beginning; thence continuing North 18 degrees 07 minutes 39 seconds West, a distance of 2443.75; thence North 33 degrees 14 minutes 55 seconds West, a distance of 80.31 feet; thence North 48 degrees 16 minutes 04 seconds West, a distance of 494.15 feet to the North line of the West Half of said Section 28 and the Point of Terminus, at which point the Northwest Corner of the Northwest Quarter of said Section 28 bears North 87 degrees 51 minutes 13 seconds West, a distance of 1973.22 feet.

Extending or Shortening the side lines to close upon the South line of the Northeast Quarter and North line of the West Half of said Section 28. Containing 150,910.74 Square Feet or 3.464 Acres more or less.

## REFER TO SHEET 1 OF 2
## FOR EXHIBIT DRAWING

REF. DWG:                     LINE LIST NO.: 3504

| SURVEYED AND PREPARED BY: | 2 | 5/26/10 | JDB | REVISED OWNERSHIP | | |
|---|---|---|---|---|---|---|
| **SHAFER, KLINE & WARREN, INC.** 2940 Main St., Kansas City, MO 64108 816/756-0444  FAX: 816/756-1763 | 1 | 7/28/09 | JDB | REVISED ALIGNMENT | | |
| | NO. | DATE | BY | DESCRIPTION | PROJ. ID | APPR. |
| | | | | **REVISIONS** | | |

| Division: ROCKY MOUNTAIN | Op. Area:  ELKO | | |
|---|---|---|---|
| State:  NEVADA | Co./Par.:  WASHOE | **LAND PLAT** | |
| Section:  28 | Township:  45N  Range:  19E | **RUBY PIPELINE — LN 300A** | |
| Dft:  JDB  Date:  10/20/08 | Project ID  122650 | **CROSSING** |  |
| Chk:  TLJ  Date:  10/24/08 | Scale:  1"=1000' | **PATRICK D. FITZGERALD** | |
| Appr:  DLH  Date: | Filename: 0300-AU-3504 | **PROPERTY** | 300AU-3504A | Sheet: 2 of 2 | Rev. Type: LANDDEV | 2 |

# PATRICK D. FITZGERALD

### 3018.21 FEET
### 182.92 RODS
### 3.464 ACRES



LEGEND

- ◓ FOUND SECTION CORNER
- ◖ FOUND QUARTER CORNER
- ◆ FOUND SIXTEENTH CORNER
- + CALCULATED CORNER
-   EASEMENT PI
- POC POINT OF COMMENCING
- POB POINT OF BEGINNING
- POT POINT OF TERMINUS

## CERTIFICATE OF SURVEYOR

I, Larry D. Graham, a Professional Land Surveyor in the State of Nevada, do hereby state that, to the best of my knowledge, information, and belief, this map was prepared from field notes taken during an actual survey made by me or under my direct supervision and that this map correctly shows the results of said survey and that the monuments found are as shown.

Larry D. Graham, LS 019919

NOTES:
1.) The accompanying plot does not constitute a boundary survey.
2.) Easement centerline may not represent location of pipeline.
3.) Client did not want any rights-of-way and easements shown.
4.) Basis of bearings – UTM bearings, Zone 11N, as established by GPS static survey, July 1, 2008 – October 1, 2008, NAD1983 Datum, NAVD1988 Datum, Geoid Model 03, and adjusted to established CORS stations.
5.) Combined adjustment factor: 0.9999875322(Grid to Ground).

REFER TO SHEET 2 OF 2
FOR LEGAL DESCRIPTION

REF. DWG:                    LINE LIST NO.: 3504



SURVEYED AND PREPARED BY:

**SHAFER, KLINE & WARREN, INC.**
2940 Main St., Kansas City, MO 64108
816/756-0444    FAX: 816/756-1763

| NO. | DATE | BY | DESCRIPTION | PROJ. ID | APPR. |
|---|---|---|---|---|---|
| 2 | 5/26/10 | JDB | REVISED OWNERSHIP | | |
| 1 | 7/28/09 | JDB | REVISED ALIGNMENT | | |
| | | | REVISIONS | | |

| | | |
|---|---|---|
| Division: ROCKY MOUNTAIN | Op. Area: ELKO | |
| State: NEVADA | Co./Parish: WASHOE | |
| Section: 28 | Township: 45N | Range: 19E |
| Dft: JDB | Date: 10/20/08 | Project ID: 122659 |
| Chk: TLJ | Date: 10/24/08 | Scale: 1"=1000' |
| Appr: DLH | Date: | Filename: 0300-AU-3504 |

LAND PLAT
RUBY PIPELINE – LN 300A
CROSSING
PATRICK D. FITZGERALD
PROPERTY

**RUBY PIPELINE LLC**

| | |
|---|---|
| 300AU-3504 | Sheet: 1 of 2   Rev. |
| | Type: LANDDEV   2 |

# PATRICK D. FITZGERALD

4396.32 FEET
266.44 RODS
5.046 ACRES

## *EASEMENT DESCRIPTION*

A 50.00 foot easement for pipeline purposes across a portion of the Southwest Quarter and the Southwest Quarter of the Northwest Quarter of Section 21, Township 45 North, Range 19 East of the Mount Diablo Meridian, Washoe County, Nevada. Said easement being 25.00 feet on each side of the following described centerline:

Commencing from the Southwest Corner of said Section 21; thence South 87 degrees 51 minutes 13 seconds East, along the South line of said Section 21, a distance of 1973.22 feet to the Point of Beginning; thence North 48 degrees 16 minutes 04 seconds West, a distance of 751.57 feet; thence North 31 degrees 30 minutes 20 seconds West, a distance of 80.17 feet; thence North 14 degrees 45 minutes 07 seconds West, a distance of 79.94 feet; thence North 12 degrees 41 minutes 30 seconds West, a distance of 964.40 feet; thence North 00 degrees 58 minutes 47 seconds West, a distance of 350.78 feet; thence North 19 degrees 01 minutes 34 seconds East, a distance of 728.57 feet; thence North 00 degrees 13 minutes 20 seconds East, a distance of 80.97 feet; thence North 18 degrees 07 minutes 39 seconds West, a distance of 1359.92 feet to the North line of the Southwest Quarter of the Northwest Quarter and the Point of Terminus, at which point the Northwest Corner of said Section 21 bears North 29 degrees 20 minutes 23 seconds West, a distance of 1586.30 feet.

Extending or shortening the side lines to close upon the South line of the Southwest Quarter and the North line of the Southwest Quarter of the Northwest Quarter of said Section 21. Containing 219,816.45 Square Feet or 5.046 Acres more or less

## REFER TO SHEET 1 OF 2
## FOR EXHIBIT DRAWING

| REF. DWG: | | LINE LIST NO.: 3505 | | | |
|---|---|---|---|---|---|

SURVEYED AND PREPARED BY:

**SHAFER, KLINE & WARREN, INC.**
2940 Main St., Kansas City, MO 64108
816/756-0444   FAX: 816/756-1763

| | 2 | 5/12/10 | JDB | REVISED ALIGNMENT | | |
|---|---|---|---|---|---|---|
| | 1 | 7/28/09 | JDB | REVISED ALIGNMENT | | |
| | NO. | DATE | BY | DESCRIPTION | PROJ. ID | APPR. |
| | | | | REVISIONS | | |

| Division: ROCKY MOUNTAIN | Op. Area: ELKO |
|---|---|
| State: NEVADA | Co./Par.: WASHOE |
| Section: 21 | Township: 45N | Range: 19E |
| Dft: JDB | Date: 10/11/08 | Project ID: 122659 |
| Cnk: TLJ | Date: 10/13/08 | Scale: 1"=1000' |
| Appr: DLH | Date: | Filename: 0300-AU-3505 |

LAND PLAT
RUBY PIPELINE - LN 300A
CROSSING
PATRICK D. FITZGERALD
PROPERTY


RUBY PIPELINE LLC

| 300AU-3505A | Sheet: 2 of 2 | Rev. |
|---|---|---|
| | Type: LANDDEV | 1 |

# PATRICK D. FITZGERALD

4396.32 FEET
266.44 RODS
5.046 ACRES



SCALE: 1" =1000'
0      500'   1000'

LEGEND

⬤ FOUND SECTION CORNER

◖ FOUND QUARTER CORNER

◆ FOUND SIXTEENTH CORNER

+ CALCULATED CORNER

○ EASEMENT PI

POC  POINT OF COMMENCING

POB  POINT OF BEGINNING

POT  POINT OF TERMINUS

## CERTIFICATE OF SURVEYOR

I, Larry D. Graham, a Professional Land Surveyor in the State of Nevada, do hereby state that, to the best of my knowledge, information, and belief, this map was prepared from field notes taken during an actual survey made by me or under my direct supervision and that this map correctly shows the results of said survey and that the monuments found are as shown.

NOTES:

1.) The accompanying plat does not constitute a boundary survey.

2.) Easement centerline may not represent location of pipeline.

3.) Client did not want any rights-of-way and easements shown.

4.) Basis of bearings – UTM bearings, Zone 11N, as established by GPS static survey, July 1, 2008 – October 1, 2008, NAD1983 Datum, NAVD1988 Datum, Geoid Model 03, and adjusted to established CORS stations.

5.) Combined adjustment factor: 0.9999875332(Grid to Ground).

PROFESSIONAL LAND SURVEYOR-STATE OF NEVADA
LARRY D. GRAHAM
Exp.6/30/11
No. 019919

Larry D. Graham, LS-019919

## REFER TO SHEET 2 OF 2 FOR LEGAL DESCRIPTION

REF. DWG:          LINE LIST NO.: 3505

SURVEYED AND PREPARED BY:



**SHAFER, KLINE & WARREN, INC.**
2940 Main St., Kansas City, MO 64108
816/756-0444   FAX: 816/756-1763

| | DATE | BY | DESCRIPTION | PROJ. ID | APPR. |
|---|---|---|---|---|---|
| 2 | 5/12/10 | JDB | REVISED ALIGNMENT | | |
| 1 | 7/28/09 | JDB | REVISED ALIGNMENT | | |
| NO. | | | REVISIONS | | |

| | |
|---|---|
| Division: ROCKY MOUNTAIN | Op. Area: ELKO |
| State: NEVADA | Co./Par.: WASHOE |
| Section: 21 | Township: 45N   Range: 19E |
| Dft: JDB   Date: 10/11/08 | Project-ID: 122659 |
| Chk: ILJ   Date: 10/13/08 | Scale: 1"=1000' |
| Appr: DLH   Date: | Filename: 0.300-AU-3505 |

LAND PLAT
RUBY PIPELINE – LN 300A
CROSSING
PATRICK D. FITZGERALD
PROPERTY

RUBY ⬗ PIPELINE LLC

| 300AU-3505 | Sheet: 1 of 2 | Rev. |
|---|---|---|
| | Type: LANDDEV | 1 |

1

## PROOF OF SERVICE

2

3    I, the undersigned, declare:

4    I am a citizen of the United States and employed in the County of San Joaquin, State of California. I am over 18 years and not a party to the above-entitled action. My
5    address is POB 1213 Woodbridge, CA 95258.

6    I deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if
7    postal cancellation date or postage meter date is more than one (1) day after deposit for mailing in affidavit.

8

9        On July 8, 2010 I served the following documents:

10    **NOTICE OF MOTION AND MOTION UNDER SECTION 363 OF THE BANKRUPTCY CODE FOR ORDER (1) APPROVING THE SALE TO RUBY**
11    **PIPELINE, LLC OF A RIGHT OF WAY AFFECTING THE DEBTOR'S VYA RANCH PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBERANCES**
12    **AND INTERESTS; AND (II) FIND THAT RUBY PIPELINE, LLC IS A GOOD FAITH PURCHASER.**

13

14    By placing a true copy of the documents, together with a copy of this declaration, in sealed envelopes addressed as stated below. I caused such envelope(s) to be
15    deposited in the mail at Stockton, California. The envelope(s) was/were mailed with postage thereon fully prepaid.

16    *See Attached Service List*

17

18    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19    Executed on July 8, 2010 at Stockton, California.

20

21

22

23

24

25

26

27

28

SALLY WILLIAMS SBN 129181
WILLIAMS LAW OFFICE
555 SOQUEL AVENUE SUITE 370
SANTA CRUZ, CA 95062
FAX NO. 831-426-7068

GREGORY A. MURPHY SBN 95714
LAW OFFICES OF GREGORY A. MURPHY
831 EAST 2ND STREET, SUITE 203
BENICIA, CA 94510

US TRUSTEE
DEPARTMENT C, COURTROOM 35, 6TH FLOOR
501 I STREET
SACRAMENTO, CA 95814

RUTH A. ROWLETTE SBN 164419
RUTH A. ROWLETTE, INC.
777 CAMPUS COMMONS ROAD SUITE 200
SACRAMENTO, CA 95825
FAX NO. 916-565-7622

JEFFERY TROWBRIDGE
180 GRAND AVENUE, SUITE 1550
OAKLAND, CA 94612
FAX NO. 810-602-7288

MR. THOMAS ROHALL
ATTORNEY AT LAW
IRS DISTRICT COUNSEL
4330 WATT AVENUE   SA4301
SACRAMENTO, CA  95821